494

Estate of JOHN C. PERCIVAL, Deceased.   DANIEL **D.** KINLEY et al., Appellants, v. GERALD D. GLENN, as Executor, etc., Respondent.

Cecil J. Bishop and Chester Gannon for Appellants.

Richard J. Lawrence for Respondent.

PEEK, J.—This is an appeal by John Cary Kinley and Daniel D. Kinley, the sons and sole surviving heirs of decedent, from an order of the trial court determining that they were not entitled to succeed to any portion of the estate of decedent.

On March 17, 1952, Gerald D. Glenn, as executor, filed his petition for probate of the will of decedent dated November 30, 1951. The will, after the customary paragraphs relative to soundness of mind, lack of undue influence or fraud and revocation of all former wills, provided that Glenn who was named as executor to serve without bond, was to receive all of the property of which the testator died possessed; and that the testator's body was to be cremated. Article 5 of the will provided:

"If any person should assert a claim to my estate or any part thereof, other than the devisee named, or should institute any contest to this will, then to such person or persons I bequeath the sum of ONE DOLLAR and no more."

Following the order admitting the will to probate, the two sons filed their petition for distribution of the estate to themselves as pretermitted heirs. On April 7, 1953, a hearing was had on said petition. The minute order entered at the conclusion thereof states in part that witnesses were sworn and documentary evidence was introduced. Specifically referred to were two exhibits of petitioners which were not admitted in evidence but were marked 1 and 2 for identification. The order then states ". . . the hearing on said petition at this time be continued generally."

On June 25, 1953, and prior to either a further hearing or order of the court pursuant to the April 7 order, Glenn as executor filed a petition for probate of a prior will dated March 19, 1951. This will, after making the same introductory statements and the same dispositive provisions to Glenn as those contained in the November will, provided in article 5, "I purposely refrain from making any bequests to my sons, Daniel D. Kinley of Cincinnati, Ohio, and John C. Kinley of Houston, Texas, for reasons good and sufficient unto myself." The will also contained an identical provision as to contest but made no mention concerning cremation of the testator's body. On March 11, 1954, the court entered its findings and

conclusions of law and decree determining heirship. Therein it was found:

"IV.

"That it was the intention of the testator that the first Will be revoked only if the second Will was legally effective; that it was the intention of the Testator that in the event that the second Will would amount to intestacy in so far as the disposing portions were concerned, the first Will remained legally effective, and the provisions of the Will which disinherited the petitioners herein, DANIEL D. KINLEY and JOHN CARY KINLEY, were effective for that purpose, and the portion of the Will which disposed of the entire estate to GERALD D. GLENN was legally effective.

"V.

"That the exclusionary clause in both Wills admitted to probate shows that the omission to provide for the Testator's children, DANIEL D. KINLEY and JOHN CARY KINLEY, was intentional. That the petitioners, DANIEL D. KINLEY and JOHN CARY KINLEY, have had no provision made for them by the Testator, by a settlement, nor have the said petitioners been given an equal proportion of the Testator's property as an advancement; that it is not true that it does not appear from the Will of said decedent that such omission of petitioners was intentional; that it is not true that the petitioners are pretermitted heirs of said decedent."

The court then concluded that both wills should be construed together as the last will and testament of the decedent; that article 5 of the first will was not revoked by the revoking clause contained in the second will; that the testator's omission in the second will to provide for his sons "was intentional"; and that said sons could not "claim as pretermitted heirs of the decedent . . ." The order which was thereafter entered decreed that Glenn, as sole devisee, was entitled to succeed to the entire estate and that neither of the sons was entitled to succeed to any portion thereof.

On March 17, 1954, the petitioners filed their notice of intention to move for a new trial, upon the ground of newly-discovered evidence and insufficiency of the evidence to justify the order. The affidavit of their counsel in support thereof referred to two letters (apparently the two mentioned in the minute order of April 7, 1952) written by decedent subsequent to the execution of the first will and prior to the execution of the second; that in the letter written to his son John, he stated he was entering a hospital for at least three months;

that he had made ". . . a will relative to cremation & etc. and for you to receive cash for any assetts (sic) & split it with Dan. Your names are not mentioned in Will!" The affidavit also set forth testimony which would be given by Sylvia Howland concerning a conversation between Glenn and the testator and testimony which would be given by the two sons concerning a conversation with Glenn after the death of the testator.

From the record as summarized, it appears that at the time of the hearing on the petition to determine heirship, April 7, 1953, only one will, and only one question was then before the court—were the sons pretermitted heirs? The will of March 19, 1951, was not before the court, and as appears from the affidavit of petitioners' counsel in support of the motion for a new trial, that will was offered for probate only after intervention on the part of the court subsequent to the April 7 hearing by means of a letter suggesting to the executor that such should be done. It further appears that after that will was so offered, petitioners were given no opportunity to produce any evidence in their behalf.

It is readily apparent that at the conclusion of the April 7 hearing, the state of the record was such that there could be no question but that the petitioners were the pretermitted heirs of their deceased father. This is true first because by the terms of the only will then before the court, the two sons were not mentioned, no provision was made for them directly or otherwise, and there is nothing contained therein which would indicate that the testator had them in mind when the will was executed or that the omission was intentional. (Prob. Code, § 90.) Furthermore, the no-contest clause is the same as that found in many wills in that it merely provided that if any person "should assert a claim" or contest the will, "such person or persons" should receive "ONE DOLLAR." Thus, under such circumstances, it necessarily follows that the two sons were the pretermitted heirs of the testator. (*Estate of Price*, 56 Cal.App.2d 335 [132 P.2d 485].) Secondly, if it were a proper case for the application of the rule of dependent relative revocation, the will of March, 1951, had not been admitted to probate, was not properly before the court below and could furnish no basis upon which distribution of the property could be made. (*Estate of Christensen*, 135 Cal. 674 [68 P. 112]; see also *Reed* v. *Hayward*, 23 Cal.2d 336, 339 [144 P.2d 561].)

But even if we were to assume that the order entered on

April 7, 1953, merely continued the hearing until the further order of the court, or if we assume that for some reason the March will was properly before the court when it made its order of March 11 the following year, we still would be compelled to reverse the case. ▪ It is quite apparent from petitioners' motion for a new trial that the proffered evidence which they sought to introduce could have taken the case completely out of the dependent relative revocation rule upon which the court ultimately based its order. Necessarily if the court was going to consider the earlier will, then petitioners' motion called to its attention the existence of pertinent evidence to be considered in construing the last will, and therefore the court should have opened the cause to receive it. Hence to deny the motion was to prevent a full and fair trial of the sons' petition.

▪ "While a court has wide discretion in passing upon such a motion this discretion should be exercised in accordance with legal principles and in accordance with the ends of justice." (*Christina* v. *Daneri*, 22 Cal.App.2d 190, 193 [70 P.2d 983].) The court, in *Estate of Fama*, 112 Cal.App. 2d 309 [245 P.2d 1101], in reversing a judgment in a will contest for failure of the trial court to reopen the case to permit further testimony on a material issue, quoted with approval the above statement from the Christina case, and as in that case held that the failure to reopen the case "in order to permit justice to be done . . . was an abuse of discretion." (P. 313.) ▪ Thus, in view of the situation which prevailed at the time the within matter was submitted on April 7, 1953, and the fact that subsequently the court, by its own act, secured probate of the March will and thereafter construed the two wills together so as to come within the dependent relative revocation rule, we likewise must hold that the order of the court denying petitioners' motion for a new trial was an abuse of discretion.

The appeal from the order denying the motion for new trial is dismissed, and the judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.