407 P.2d 108

Max X. KLINGER and Joan Klinger, C. Edgar Goyette, Cornelia R. Goyette and C. Edgar Goyette, Jr., Appellants,

v.

W. F. CONELLY and Pauline Conelly, his wife, Fred G. Kennedy and Ruth D. Kennedy, his wife, John J. Cramer, Appellees.*

2 CA–CIV 87.

Court of Appeals of Arizona.

Nov. 2, 1965.

Johnson, Darrow, D'Antonio, Hayes & Morales, by J. Mercer Johnson, Tucson, for appellants.

Cusick & Watkins, by E. T. Cusick, Tucson, for appellees Conelly.

Fickett & Dunipace, by William S. Dunipace, Tucson, for appellees Kennedy and Cramer.

STEVENS, Chief Judge.

This consolidated appeal relates to procedural problems arising out of the inadequacies of trial preparation in behalf of the plaintiffs-appellants. In the trial court throughout the entire proceedings, including the entry of judgment, the plaintiffs were represented by counsel other than the counsel on appeal.

Early in the year 1960 the plaintiffs filed three separate quiet title actions. In each of the complaints there was an identical description by lot and block together with

---

* This consolidated appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8227. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

a metes and bounds area. The complaint acknowledged that the property of the plaintiffs was subservient to certain easements set forth in deeds recorded in specified books and pages of the office of the County Recorder. All of the defendants in their respective answers plead an easement across the property of the plaintiffs.

The three cases were consolidated for trial and on the 9th day of April 1962 Judge Molloy conducted a pretrial conference and the record reflects a detailed pretrial order. Matters material to the trial were set forth in the pretrial order including: Plaintiffs' Exhibit 1 was marked for identification. This exhibit was the plat of a 1958 survey of the property which the plaintiffs owned which property is the subject of the quiet title actions, the plat disclosing an area designated as "easement." Exhibit 2 was a plat of Summerhaven on Mt. Lemmon which plat was prepared in the year 1926. (This exhibit was received in evidence at the trial without objection.) Defendant Conelly's Exhibit D in evidence, a deed to an easement with a metes and bounds description which description did not correspond to the metes and bounds description contained in the complaint. The exhibit was the original recorded document, the same having been recorded in the year 1947 and bearing thereon the recording data by book and page, being different from the book and page information set forth in the plaintiffs' complaints. The pretrial order further established certain titles and recited that by stipulation the issues to be tried were:

"1. Whether or not the roadway which is being used by the defendants is located upon the property owned by the plaintiffs;

"2. Whether or not such roadway has been used open, notoriously and adversely by the defendants or their predecessors in interest for a period of ten years prior to the filing of plaintiffs' complaint;

"3. whether plaintiffs may have acquired the roadway by perscription

(sic), and, if so, whether the public has been openly, notoriously and adversely using said roadway for more than ten years prior to the filing of plaintiffs' complaint;

"4. whether or not the roadway now being used by the defendants is the easement granted by Conellys' Exhibit D in evidence."

The case was tried to the court without a jury and commenced in the City of Tucson on the 25th day of April 1962. The record reflects the then crowded condition of the Court House in that the case was called for trial "In Jury Room No. 2. of the Court House, Pima County, Arizona". One witness was sworn and testified and on cross-examination it was developed that the area of the sub-division known as Summerhaven on Mt. Lemmon (which is several thousand feet in elevation above that of Tucson) was rough terrain and that the sub-division plat did not accommodate itself to the terrain in that some of the roads were practically not useable. It was also established that quite some time prior to the 1958 survey there was a roadway or perhaps it could be better expressed as a route used by vehicles, across the plaintiffs' land in the direction of the cabins of the defendants.

Upon the conclusion of this witness's testimony, and pursuant to stipulation, the trial recessed to an inn in Summerhaven. Pursuant to a further stipulation, the court then proceeded to the area in question with a surveyor who pointed out various locations upon the terrain after which the court reconvened at the inn. The record reflects that the participants were directed to find seats and "make themselves as comfortable as the circumstances will permit, before the fireplace in the main room of the * * *" inn. The surveyor testified that he was unable to say that the roadway delineated on Exhibit 1 was identical to the easement set forth in Exhibit D and he admitted that the descriptions were not the same. The court observed that an examination of Exhibit 1 did not

show the roadway which was pointed out on the land. Plaintiffs' counsel then stated "Let me state to the Court that this is, of course, a surprise to me, and I naturally assumed that the * * * survey was made in accordance with the legal descriptions". Counsel further stated, " * * * I feel that I must, because of what has developed here, ask that the case be continued so that we may have an adequate and proper survey made in accordance with the legal descriptions of the properties of the parties". Whereupon other witnesses were sworn and testified on behalf of the plaintiffs. Upon completion of this testimony plaintiffs' counsel addressed the court and stated " * * * at this time, because of the failure of our surveyor to be able to establish very properly the exact location of the easement and of the road, I am at this time forced to ask the Court for a continuance, so that the survey may be made in proper order. We naturally do not want to rest, * * *".

The trial court made a preliminary indication that the court felt that this might be appropriate whereupon the defendants requested leave to be heard and they were heard entering serious objection to any continuance; urging the fact of the pretrial; the opportunity to prepare; and that the request for further time is not a proper case for surprise. The defendants urged that they were not in a position to go forward with the evidence until the plaintiffs had rested and a motion was made to dismiss the action for failure of proof. Plaintiffs' counsel again informed the court that the survey was made some five years prior to the trial; that counsel assumed that it was in accord with legal descriptions of the property and the easements; and that it was only at the time of the trial that the surveyor in examining his notes testified that it was not made in accord with the legal documents. Addressing the court he said, "* * * give us a chance to get a proper survey in * * *". The motion for continuance and the motion to dismiss were taken under advisement with

leave to file memoranda. The appellants' opening brief states that plaintiffs' counsel "filed his memorandum on the 3rd day of August, 1962, advising the Court that a continuance was no longer necessary, as sufficient information had been obtained since the adjournment of the Court on April 25, 1962, to overcome the surprise sustained during trial and was ready to proceed with the trial". Even though these matters are not reflected in the Abstract of Record, the fact of representation is not controverted in the other briefs. On oral argument it was stated that the final memorandum for all parties was filed on the 16th day of August 1962 and this was not controverted.

On the 15th day of April 1963 the court entered an order denying the motion for continuance and "granting defendant's Motion for Dismissal of Plaintiff's Complaint". A formal written judgment to this effect was signed on the 16th day of September 1963 and filed on the 19th day; this judgment denied the motion for continuance; adjudged that the plaintiffs take nothing by their complaints and "that defendants' motions to dismiss plaintiffs' complaints with prejudice be granted". The Abstract of Record is silent as to any objections as to the form of judgment. Approximately two months later there was a substitution of attorneys.

It is urged that it was error for the judgment to recite a dismissal with prejudice when the minute entry was silent in this respect. In the case of Anguiano v. Transcontinental Bus System, 76 Ariz. 246, 263 P.2d 305 (1953), the Arizona Supreme Court had under consideration a dismissal under Rule 41(b), the Court stating that "This order of dismissal did not state that the same was without prejudice". The Supreme Court held that such a dismissal was an adjudication and was a dismissal with prejudice. While it is true that the circumstances in Anguiano differ from those in the case at bar, the case at bar does come within the rule's language "any dismissal not provided for in this rule" operates as

an adjudication upon the merits unless the order otherwise specifies. We are unable to sustain the appellants' position in this respect.

 It is urged by the appellants that this case is governed by Rule 43(j) which reads as follows:

"Omission of testimony during trial. The court may at any time before commencement of the argument, when it appears necessary to the due administration of justice, allow a party to supply an omission in the testimony upon such terms and limitations as the court prescribes."

The Rules of Practice were adopted by the Arizona Supreme Court to assure adequate preparation anticipatory to a trial and to require the trials proceed expeditously. In this case there was not "surprise" but a lack of preparation. An examination of the documents presented at the pretrial conference as well as the issues framed by the pretrial order placed the plaintiffs upon notice as to the problems and when plaintiffs' counsel advised the court that he naturally assumed that the record was in order, no proper basis for continuance existed and the trial court should have granted the motion to dismiss for failure of proof before leaving the inn.

 The appellants urged that Rule 39(j) of the Rules of Civil Procedure requires a reversal of this case. This rule reads as follows:

"*Limitation of time of decision by court.* In an action tried by the court, the decision of the court shall be given within sixty days after submission of the action. Where briefs are filed, the action shall not be deemed submitted until the time for filing the briefs has expired."

The appellants did not urge this upon the trial court and matters not presented to the trial court may not be first presented on appeal. Bowman v. Hall, 83 Ariz. 56, 61, 316 P.2d 484 (1957). This Rule appears to have been adopted pursuant to the authority of Section 21 of Article 6 of the Arizona Constitution as amended, A.R.S., which section states that "Every matter submitted to a judge of the superior court for his decision shall be decided within sixty days from the day of submission thereof. The Supreme Court shall by rule provide for the speedy disposition of all matters not decided within such period". The only action which the Supreme Court has taken to "provide for the speedy disposition" is found in Rule 77(i), formerly Rule 77(j) requiring periodical reports from the Clerk of the Superior Court but affording no relief to either party should the matter not be ruled upon within the sixty day period.

The judgment is affirmed.

CAMERON, and DONOFRIO, JJ., concur.

(This cause was decided by the Judges of Division One as authorized by A.R.S. § 12–120, subsec. E.)