345 P.2d 780

**Frank GOLFINOS, Appellant,**

v.

**SOUTHERN PACIFIC COMPANY, a Delaware Corporation, and Bill F. Camp, Appellees.**

No. 6425.

Supreme Court of Arizona.

Nov. 5, 1959.

Rehearing Denied Nov. 24, 1959.

Charles Christakis, Phoenix, for appellant.

Evans, Kitchel & Jenckes, and Ralph J. Lester, Phoenix, for appellee.

WILLIAM W. NABOURS, Superior Court Judge.

On September 3, 1953, at approximately 1:30 o'clock in the morning, the plaintiff Frank Golfinos was driving his 1946 Ford automobile south on 27th Avenue in the vicinity of Phoenix, Maricopa County, Arizona. Approximately three-quarters to a mile south of West Van Buren Street, 27th Avenue intersects the tracks of the defendant involved. Plaintiff's automobile collided with a boxcar of the defendant railroad company, standing or slowly moving

across 27th Avenue, resulting in injury to the plaintiff and the complete loss of his automobile. Suit was filed by the plaintiff against the defendant railroad company and it's engineer, Bill F. Camp.

Trial was held and at the close of the plaintiff's case, the defendants without presenting any testimony or evidence, announced that they rested and then moved for a Directed Verdict. The trial court granted defendants' motions and instructed the jury to return a verdict in favor of both defendants. After the order was made denying plaintiff's motions to set aside the verdict, for Judgment N. O. V. and for a new trial, plaintiff brought this appeal.

Appellant makes five assignments of error supported by nine propositions of law. These will not be considered individually as they are all to be determined upon the one question of whether the trial court was in error in directing a verdict for the defendants.

It was a very dark night, with no moon and no unusual atmospheric conditions. Plaintiff was familiar with the crossing, having lived in Phoenix for some twenty years and having passed over the crossing before. On approaching the crossing from the north the only warning sign present was the usual cross-arm sign, located approximately ten feet west of the road and about eight feet north of the railroad tracks, the center of the cross-arm being approximately ten feet above the ground. As the street approaches the railroad tracks, it goes up an incline, the railroad tracks being some three to four feet above the usual level of 27th Avenue on the north and on the south side of the tracks, the road descends approximately four to five feet where it again becomes level.

The plaintiff was driving between 25 and 30 mph and the train was moving at approximately one or one and one-half mph at the time of the collision. For several minutes prior to the impact the train had been sitting across the intersection, the engine being a few feet west of the intersection, and the seven boxcars it was connected to being to the east of the engine, the first boxcar actually sitting across the road. The facts further show that the road at that point was some 17 feet in width and the boxcar some 50 feet in length. The boxcars were of a dark russet color; the only lights burning were the headlamps of the engine, being located on both the front and back of the engine, and ground lights located on the side of the engine under the runningboard. There were no obstructions blocking the view of the crossing from the driver. The train had just started moving to the east when the collision occurred, the point of impact being on the first boxcar east of the engine and at a point two feet eight inches from the west edge of 27th Avenue.

There were no indications of any skid marks on the road and the plaintiff testified that he never did see the boxcar until he struck it. There was testimony that showed because of the incline, the lights of an automobile would not strike the side of a boxcar until the automobile was within twenty-five feet of the train; other testimony, however, was to the effect that a train or boxcar would be visible from the highway for a distance of one hundred to three hundred feet, depending on what sort of a lookout the driver was keeping.

This Court has consistently held that the trial court is justified in directing a verdict only where the evidence is insufficient to support a contrary verdict or so weak that the Court would feel constrained to set aside such a verdict on a motion for a new trial. Casey v. Beaudry Motor Co., 83 Ariz. 6, 315 P.2d 662; Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201. In viewing the evidence to determine whether it is such that reasonable men might conclude the fact of negligence, such evidence must be viewed in a light most favorable to him who urges that it be submitted to the jury as against the party who urges that no jury question has been presented. Cope v. Southern Pacific Co., 66 Ariz. 197, 185 P. 2d 772; Southern Casualty Co. v. Hughes, 33 Ariz. 206, 263 P. 584; Western Truck Lines v. Du Vaull, 57 Ariz. 199, 112 P.2d 589; Figueroa v. Majors, 85 Ariz. 345,

338 P.2d 803. In the case of Cope v. Southern Pacific Co., supra [66 Ariz. 197, 185 P.2d 775], the court stated:

"A verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions."

This Court in prior decisions discussed the very facts here in issue and laid down certain well-settled rules relating to the obligations of the railroads where their trains are blocking the highway while engaged in various operations. We said in the case of Atchison, T. & S. F. Ry. Co. v. Renfroe, 77 Ariz. 28, 266 P.2d 745, 748:

"The correct answer is dependent upon the extent of the duty of the railroad to warn travelers of the presence of cars occupying an intersection under the circumstances here related. The test for defining the limits of this duty is provided by previous pronouncements of this court as requiring such notice of the presence of the track and the train as a reasonable prudent person would be expected to give under the particular circumstances. Doty v. Southern Pacific Co., 59 Ariz. 449, 129 P.2d 991; Cope v. Southern Pacific Co., 66 Ariz. 197, 185 P.2d 772. The Doty case goes further and enunciates the principle that what is required of a reasonably prudent person in

this class of cases is to give such warning under the existing circumstances as will create a condition wherein there is no reason to anticipate injury to a person using the highway with due care. If such warnings are given, the railroad's duty is fully performed and it cannot under such circumstances be held negligent. In other words, warnings need not be given beyond that which is necessary to protect travelers using the highway with due care under the circumstances then and there existing. Consequently, in the present case, if there existed such warnings that there was no reason to anticipate injuries to one using the highway with due care at that time and place, the defendant has met its full duty and cannot be held to be negligent."

The Court then found that the facts of the case left no question; as a matter of law the defendant had fulfilled its duty and was not negligent.

In the later case of Southern Pacific Railroad Co. v. Mitchell, 80 Ariz. 50, 292 P.2d 827, 832, the Court again had the question of adequate warning before it and made this observation: That the common law standard of conduct applicable to a railroad company as to all persons in order to escape liability for injuries of another is to attain the status of a reasonable prudent person under the particular circumstances. The Mitchell case, perhaps, caused some misunderstanding as to the position the Court has taken in relation to the possible liability of a railroad in the so-called "blocked crossing" situation. It has resulted in the belief that under the "blocked crossing" situation there is never any liability so long as the railroad has met the minimum standards required by statute as related to notice and warning devices required to show the presence of the crossing to the highway traveler.

■ While the Court is not in anyway indicating that it is reversing or setting aside the theory advanced in that case, or the cases cited in support thereof, it is of the opinion that the single fact that a railroad car was sitting across the highway creating the so-called "blocked crossing" situation, does not in itself automatically remove any question of negligence on the part of the railroad.

We reiterate the statements that have heretofore been set out in this opinion, as taken from prior cases, that each case must be determined upon its particular facts. As stated in the case of Southern Pacific Railroad Co. v. Mitchell, supra:

"It is axiomatic that a railroad company owes to travelers on the highway the affirmative duty of due care in the maintenance and safeguarding of its crossings and in the operation of its trains thereon. What constitutes such

due care is measured in each instance by the facts of the particular situation. It is the extent of that duty for which defendants are chargeable which is here at issue."

This reasoning is further supported by the recent decisions of other jurisdictions, in St. Louis, Southwestern Railway Co. of Texas v. Duffy, Tex.Civ.App., 308 S.W.2d 202; Budkiewicz v. Elgin, Joliet & Eastern Railway Co., Ind., 150 N.E.2d 897; Peagler v. Atlantic Coast Line R. Co., 234 S.C. 140, 107 S.E.2d 15.

Appellees in urging the correctness of the lower court's ruling, rely upon the decisions handed down in the cases of Doty v. Southern Pacific Co., supra; Cope v. Southern Pacific Co., supra, and Atchison, T. & S. F. Ry. Co. v. Renfroe, supra. A careful reading of those cases show that if there existed the required statutory warnings and that there was no reason to anticipate injuries to one using the highway with due care at that time and place, the railroad has met its duty and cannot be held negligent. However, each case must still be determined upon its own facts as we have poined out in this opinion.

A review of the evidence in this case discloses a difference of opinion between the witnesses as to the conditions existing at the time of the accident. One witness stating that under the conditions then existing neither the cross-arm signal showing the presence of the crossing or the boxcar itself was visible until one was within twenty-five feet of the train. With such evidence having been presented we feel that it was error on the part of the trial court to hold as a matter of law that the defendants had fully fulfilled their duty and were not negligent. The facts being in dispute, it was a proper matter for the jury's determination.

It is unnecessary to determine any other matters set forth as assignments of error in view of the foregoing decision of the Court.

The judgment of the lower court is reversed and the case remanded for a new trial.

STRUCKMEYER and JOHNSON, JJ., concur.

Justice BERNSTEIN having been the trial judge, disqualified, and Honorable WILLIAM W. NABOURS of the Superior Court, Yuma County, was called to sit in his stead.

PHELPS, Chief Justice, and UDALL, Justice (dissenting).

We are of the opinion that on the record presented to it in this "blocked crossing" case, the trial court properly directed a

verdict for the defendant as there was no real issue of fact for the jury to determine.

It is the unquestioned law in this jurisdiction that there are three essential elements involved in every case of actionable negligence: "(1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; (3) an injury proximately resulting to the plaintiff from such failure * * *." Dungan v. Brandenberg, 72 Ariz. 47, 50, 230 P.2d 518, 521; City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323; Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352. In the last two cases we quoted with approval another statement of the rule by the Maryland Court, viz.:

" * * * In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury * * *." West Virginia Cent. & P. Ry. Co. v. State, 96 Md. 652, 54 A. 669, 671, 61 L.R.A. 574.

We have searched the record in a vain effort to find precisely what duty it is claimed the defendant railroad company owed to plaintiff that was violated. Certainly the majority opinion throws no light upon this crucial question. Apparently the decision turns upon the conflict of evidence rule; we quote the only basis given for the reversal:

"A review of the evidence in this case discloses a difference of opinion between the witnesses as to the conditions existing at the time of the accident. One witness stating that under the conditions then existing neither the cross-arm signal showing the presence of the crossing or the box car itself was visible until one was within twenty-five feet of the train * * *."

It was then held that the facts being in dispute, it was a proper matter for the jury's determination. We submit that this is a most superficial analysis of the problem presented by the appeal, as it wholly fails to come to grips with the essential elements of negligence, supra.

It should be noted that we are not dealing with a situation in which the train and automobile were simultaneously approaching the crossing, hence the matter of sufficient warning of the train's approach is not an issue. Attention, however, is called to the fact that the front and rear headlights on the locomotive were both on, as were also the ground lights, and it was the box car next to the locomotive that was struck broadside by plaintiff's automobile.

322

This is a blocked crossing case. As was stated in Doty v. Southern Pac. Co., 59 Ariz. 449, 453, 129 P.2d 991, 992:

"It is almost universally held that usually, when the driver of an automobile runs into a train standing still across a highway, no recovery can be had by the driver for damages caused by the collision. But there is an exception to this rule. When the railroad company has failed to give such notice of the presence of the track and train as a reasonably prudent man would be expected to give *under the particular circumstances*, it is guilty of negligence and the question of liability is one for a jury. * * *"

The allegations of the complaint in regard to negligence may be summarized as follows: after alleging generally that the collision was directly and proximately caused by the carelessness, recklessness, and wanton negligence of the defendants, it was specifically charged that there was wanton negligence in that (a) there was no illumination at said crossing, (b) there were no signals or lights therein situated at said track to warn of the presence of said train, and (c) there was no guard stationed at the crossing. It is significant that the majority take no stock in these specific charges of negligence, doubtless because there is no statute or regulation making such a requirement of defendant. The crossarm sign was the only warning required by law to be placed at this crossing. As we said in Canion v. Southern Pacific Co., 52 Ariz, 245, 252, 80 P.2d 397, 400:

"There is no suggestion that there was any order or regulation of either the Interstate Commerce Commission, or the Arizona Corporation Commission, requiring a watchman or automatic signal to be maintained at the crossing in question, and unless there is affirmative evidence showing that reasonable care would require such warning to be maintained, we think it was not negligence for the railroad company to fail to maintain a watchman or automatic signal at the crossing. The proper authorities have the power, in case they think a crossing is particularly dangerous, to require special precaution to be taken by the railroad company at such crossing, but in the absence of a regulation to that effect, we think the failure of the company to guard a crossing in that manner is not, as a matter of law, negligence."

Where the accident occurred is an old established crossing. Both the highway and the railroad tracks are straight, and they cross at right angles, and, except for the slight incline, there is no obstruction of vision. It is conceded that the railroad cars used in the switching operation completely blocked the crossing and that a standard warning crossarm signal was in

place. The accident occurred at 1:30 a. m. on a dark night but with no unusual atmospheric conditions. Plaintiff—aged 24 years—admitted that he was familiar with the crossing. His whole reliance for recovery is that he did not see the box car hit by his automobile until he was right onto it. Applying the tests announced in the Doty, Cope and Renfroe cases—cited with approval in the majority opinion—it is our view that the only possible reasonable conclusion is that had the plaintiff been driving with due care and caution, under the circumstances no accident would have occurred. Possibly the lack of sobriety (the usual "two beers") gives the answer to plaintiff's misfortune. It must be remembered that the test to apply here is not what the plaintiff saw or did not see, but what a reasonably prudent person would have seen under similar circumstances. Atchison, T. & S. F. Ry. Co. v. Renfroe, 77 Ariz. 28, 266 P.2d 745. It inevitably follows that under these conditions the defendant fulfilled its duty and was not negligent. The learned trial court was therefore manifestly correct in directing a verdict. We believe it is a travesty on justice to reverse the judgment and send the case back for a new trial where the ultimate outcome— if the trial court courageously does its duty—is a foregone conclusion.

The judgment of the trial court should be affirmed.

PHELPS, C. J., and UDALL, J., concur.